| Estado Libre Asociado de Puerto Rico TRIBUNAL DE APELACIONES PANEL XI | | |
|---|---|---|
| MARIO GONZÁLEZ SUÁREZ Recurrido V. BAXTER HEALTHCARE CORPORATION Peticionario | KLCE202401234 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama Civil Núm.: GM2023CV00238 Sobre: Ley de Represalia en el Empleo (Ley Núm. 115-1991) |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Álvarez Esnard, y la jueza Prats Palerm

Álvarez Esnard, Jueza Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 17 diciembre de 2024.

Comparece ante nos Baxter Healthcare Corporation ("Baxter" o "la parte peticionaria") mediante una *Petición de Certiorari.* Nos solicita la revocación de la *Resolución* emitida el 15 de noviembre de 2024, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Guayama ("foro primario" o "foro *a quo*"). Por virtud de la misma, el foro primario denegó la concesión de una sentencia sumaria bajo el fundamento de existencia de hechos en controversia en un caso en torno a represalia.

Por los fundamentos que expondremos a continuación, **denegamos** el auto de *certiorari* solicitado.

## **I.**

El 29 de marzo de 2023, el señor Mario González Suárez ("el señor González Suárez", "el demandante" o "la parte recurrida") instó una *Demanda* sobre despido por represalia contra su patrono Baxter.[1] En ajustada síntesis, alegó que se desempeñaba como *Lead*

---

[1] Apéndice de la parte peticionaria, págs. 1-7. Surge del expediente ante nos, que Baxter es una corporación debidamente autorizada para hacer negocios en Puerto

*Operator* en la aludida corporación al momento de su destitución. En lo pertinente a la controversia, manifestó que se sentía discriminado por su supervisora, pues exhibía un trato distinto hacia éste en comparación con otros compañeros de trabajo. Puntualizó que tal evento ocurrió luego de que ésta adviniera en conocimiento del contenido desfavorable de una evaluación realizada por el demandante.

En ese contexto, el señor González Suárez adujo que, el 14 de julio de 2022, su supervisora exhibió molestia tras éste informarle que unos drones de *Desperdicios Peligrosos* no contenían las fecha de acumulación en violación de los protocolos. Al día siguiente, indicó que el personal de recursos humanos le informó que estaba cesanteado debido a que utilizó los periodos de descanso en contravención a los reglamentos del trabajo. Advirtió que, con anterioridad, no había recibido carta alguna de amonestación o suspensión. En vista de lo anterior, solicitó (1) la restitución a su empleo, (2) el pago de la suma de $36,000.00 por concepto de angustias mentales, (3) $44,928.00 por concepto de salarios dejados de devengar, (4) $7,320.00 por concepto de beneficios, más las cuantías correspondientes en concepto de gastos y honorarios de abogados.

En respuesta, el 18 de mayo de 2023 Baxter presentó su *Contestación a la Demanda*.[2] En esencia, sostuvo que despidió al demandante porque actuó en violación a las normas sobre periodo de descanso. Sobre este particular, especificó que registró su ponche, mas no rindió su trabajo una vez concluyó tal periodo. En cuanto al incidente de los drones, afirmó que era responsabilidad del señor González Suárez como *Lead Operator Wastewater Plant* de

---

Rico destinada a la manufacturación y comercialización de productos y servicios médico-hospitalarios.

[2] Apéndice de la parte peticionaria, págs. 8-15.

corregir esa situación. Por lo anterior, peticionó que el foro primario desestimara la demanda por frivolidad, toda vez que el demandante no tiene derecho a los remedios solicitados.

Luego de una serie de acontecimientos procesales, que no son necesarios pormenorizar, el 26 de abril de 2024, Baxter presentó una *Moción de Sentencia Sumaria* acompañada de numerosos documentos.[3] En esta, argumentó que el señor González Suárez no establece un caso *prima facie* de represalia, pues no brindó la información, expresión o testimonio alguno ante el foro administrativo, legislativo o judicial, ni trajo queja interna alguna ante su patrono. En esa línea, resaltó que durante la deposición dirigida al demandante, este ni siquiera precisó cuáles fueron las respuestas adversas que brindó sobre su supervisora. Sobre este particular, expresó que en el documento evaluativo aclaró que expuso su sentir en el lugar de trabajo. Respecto al asunto de los drones, puntualizó que el despido no estuvo motivado a ese hecho. Al contrario, explicó que su destitución respondió a su incumplimiento con las normas relacionadas con el registro de ponche y abandonar su área de trabajo sin autorización en contravención de las reglas y políticas de Baxter. En vista de ello, señaló que el despido fue justificado y sin ánimo de represalia. Por tanto, ante la ausencia de controversias, peticionó que el foro primario dictara sentencia sumaria desestimando la acción legal incoada en su contra.

En atención a su solicitud, el 29 de abril de 2024, el Tribunal de Primera Instancia dictó *Orden*, notificada en esa fecha, en la cual concedió a la parte demandante el término de veinte (20) días para

---

[3] Apéndice de la parte peticionaria, págs. 16-400. Entre los documentos presentados con dicha solicitud se encuentran: (1) Deposición del señor González Suárez del 11 de octubre de 2023 (Anejo I), (2) *Declaración Jurada* de la señora Julia Vázquez, quien es *Facilities Manager* de Baxter, acompañada de voluminosa documentación Administrativa (Anejo II), y (3) *Declaración Jurada* de la señora Elizabet Centeno López, quien es *Senior HR Manager* de Baxter, acompaña de extensa documentación administrativa.

someter su posición en torno a la sentencia sumaria peticionada por Baxter.[4] Con posterioridad, el 31 de mayo de 2024, el foro *a quo* emitió *Orden*, notificada el 3 de junio de 2024. En ese dictamen, advirtió a las partes que no aceptaría réplicas en torno a la solicitud de sentencia sumaria presentada, pues solamente consideraría la aludida moción y su respectiva oposición.[5]

Tras la concesión de una prórroga, el 7 de junio de 2024, el señor González Suárez presentó su *Oposición a Moción de Sentencia Sumaria* respaldada de material probatorio.[6] Entre otros extremos, reiteró que fue despedido al día siguiente de informar a su supervisora que varios drones en proceso de embarcación no tenían la fecha de comienzo de almacenamiento en violación de los protocolos de la corporación y regulaciones federales. Argumentó, a su vez, que está en controversia el asunto sobre la distribución de su primer y segundo periodo de descanso. En cuanto al incumplimiento del registro del ponche, razonó —mediante cómputos numéricos— que Baxter lo despidió por tardarse menos de dos (2) minutos al día en comprar comida antes de ponchar.  Agregó que el *Manual de Empleados* en las páginas cuarenta y dos (42) y cuarenta y tres (43) provee el mecanismo de medidas disciplinarias coercitivas para atender la conducta atribuida al demandante. Ante el argumento de hechos en controversia, peticionó que el tribunal declarara *No Ha Lugar* la moción de sentencia sumaria presentada por Baxter.

Posteriormente, el 20 de junio de 2024, el foro primario celebró una vista de estado de los procedimientos en la cual

---

[4] Apéndice de la parte peticionaria, pág. 401.

[5] Apéndice de la parte peticionaria, pág. 402.

[6] Apéndice de la parte peticionaria, págs. 403-493. Entre los documentos presentados con dicha solicitud se encuentran: (1) Deposición del señor González Suárez del 11 de octubre de 2023 (Anejo I), (2) Fotografía de los drones (Anejo II), (3) *Declaración Jurada* de la señora Wanda Ivelisse Rovira Defendini (Anejo III) (3) Documento intitulado *Procedimiento de Gestión para el Manejo de Desperdicios Sólidos (Peligrosos y No Peligrosos)* (Anejo IV).

comparecieron los representantes legales de ambas partes. En corte abierta, según surge de la *Minuta*[7], notificada el 20 de junio de 2024, la representación legal de Baxter indicó que reconoce que se había adelantado que no aceptaría réplica. Sin embargo, detalló que existen nuevos hechos en controversias en los párrafos (20), (21), (22) y (57) de la *Oposición*. No obstante, el foro primario dispuso que no consideraría tales hechos, sino que se limitaría a revisar la moción en cuestión y su respectiva *Oposición*.

Evaluados los escritos de las partes, el 15 de octubre de 2024, el Tribunal de Primera Instancia emitió *Resolución*, notificada al día siguiente, en la cual declaró *No Ha Lugar* la solicitud de sentencia sumaria sometida por la parte demandada.[8] En lo pertinente, formuló veinticuatro (24) determinaciones de hechos no en controversias:

1. Baxter Healthcare es una compañía internacional de manufactura y comercialización de productos y servicios médico-hospitalarios.

2. El señor González comenzó su empleo en Baxter el 21 de febrero de 2011, en el puesto de Environmental Operator I asignado a la planta de ubicada en el municipio de Guayama.

3. El señor González recibió adiestramientos, así como copia de las políticas, reglas y manuales de Baxter, incluyendo el Manual de Empleados, la Política de Registro de Asistencia y la Política de Asistencia. González también suscribió el acuerdo para reducir su periodo de tomar alimentos a 30 minutos.

4. La supervisora del señor González lo fue la Sra. Julia Vázquez, *Facilities Supervisor*.

5. El 16 de marzo de 2015, González fue promovido al puesto de *Operator II*.

6. El 9 de abril de 2018, González fue nuevamente ascendido al puesto de *Lead Operator Wastewater Plant*.

7. El 22 de marzo de 2018, la señora Vázquez se reunió con el señor González para discutir las Expectativas para Personal por Hora, entre las cuales se encontraba realizar sus ponches a tiempo para cumplir con el horario de trabajo y descanso.

8. Para todos sus puestos de trabajo; *Environmental Operator I*, *Operator II* y *Lead Operator, Wastewater*, González recibió copia de su descripción de puesto.

9. Como *Lead Operator, Wastewater*, el señor González se encargaba de los servicios requeridos por la producción para la disposición de desperdicios líquidos conforme con los

---

[7] Apéndice de la parte peticionaria, pág. 494.
[8] Apéndice de la parte peticionaria, págs. 469-506.

parámetros de la Autoridad de Acueductos y Alcantarillados o la planta de tratamiento de desperdicios.

10. Baxter contrató a una compañía independiente llamada *Qualtrics* para que condujera dos (2) encuestas al año que se completaban a través de cuestionarios. Una de las encuestas se llama *Best Place to Work*, mientras que la otra se llama *Manager Effectiveness.*

11. La supervisora Vázquez fue evaluada por sus empleados, entre ellos el señor González, en la encuesta *2021 Best Place to Work* y obtuvo un resultado general de 92% de Overall Manager Efectiveness.

12. El señor González visitó a la oficina de Recursos Humanos de Baxter donde la Directora Elizabeth Centeno le explicó el proceso de la encuesta, los cuestionarios y cómo los supervisores reciben sus resultados de la encuesta. Centeno, incluso, le mostró a González la pantalla de su computadora y cómo se veían los resultados de la encuesta.

13. Como parte de sus procesos el área de manufactura de Baxter genera desperdicios líquidos y sólidos, peligrosos y no peligrosos. Para la adecuada disposición de sus desperdicios peligrosos, ya sean líquidos o sólidos, Baxter contrata a una compañía externa de nombre Veolia.

14. Baxter lleva una bitácora de todos los desperdicios líquidos peligrosos que almacena y en ella incluye información sobre el tipo de sustancia líquida, la fecha de almacenamiento, descripción, número de lote, cantidad, peso, número de manifiesto, fecha de envío y firma de la persona encargada.

15. El 15 de julio de 2022, Baxter preparó un embarque de drones con líquidos peligrosos junto con su documentación y manifiestos, y el personal de Veolia se lo llevó para disposición.

16. El señor González alegó en sus escritos que los drones de desperdicios no se encontraban etiquetados de manera correcta ya que les faltaba la fecha de acumulación y que se lo dejó saber a su supervisora.

17. Mediante una Declaración Jurada la señora Julia Vázquez, supervisora del señor González, declaró que no recuerda que el señor González le hubiese llevado a su atención preocupación alguna sobre la falta de la fecha de acumulación en la etiqueta de los drones de desperdicios.

18. El González disfrutaba de dos (2) periodos de treinta (30) minutos para tomar alimentos ("PTA") y dos (2) periodos de descanso con paga (break) que Baxter le concedía como privilegio, que se tomaba antes del primer PTA. Durante dicho break, el empleado no estaba autorizado a salir de los predios de Baxter.

19. El señor González utilizaba el *break* para ir a la cafetería a comprar comida y luego ponchaba su PTA para salir a llevar la comida a su casa para sus hijos de dieciséis (16) y diecinueve (19) años que estaban en la casa tomando clases on-line por el encierro de la pandemia del COVID-19. Luego utilizaba su segundo break para consumir sus alimentos en los predios de Baxter.

20. El señor González alegó que tenía el permiso de su supervisora la señora Vázquez para utilizar sus periodos de descanso y de tomar alimentos de la manera en que lo estaba haciendo.

21. El señor González presentó una declaración jurada de la señora Wanda Ivelisse Rovira Defendini, quien declaró que cuando trabajaba en Baxter presenció el momento en que el

Demandado pidió permiso para utilizar los periodos de descanso de la manera antes mencionada y el momento en que su supervisora se lo concedió.

22. Mediante una Declaración Jurada la señora Julia Vázquez, supervisora del señor González, declaró que no autorizó al señor González a utilizar de manera conjunta o consecutiva los periodos de descanso y de tomar alimentos.

23. Luego de evaluar la manera en que el señor González utilizaba sus periodos de descanso y de tomar alimentos, Baxter concluyó que el demandante incurrió en múltiples violaciones a las Normas y Políticas establecidas en el Manual de Empleado, particularmente, cuatro (4) ofensas mayores y una (1) ofensa seria.

24. Tomando como fundamento la manera en que el señor González utilizaba sus periodos de descanso y de tomar alimentos y la manera en que éste registraba sus entradas y salidas, Baxter determinó dar por terminada la relación de empleo con el señor González el 15 de julio de 2022.[9]

No obstante, el foro primario identificó que dos (2) hechos esenciales en controversia los cuales ameritan dilucidar la credibilidad de los declarantes. En particular, subrayó que están en controversia: (1) el alegado hecho originado por el asunto de los drones, y (2) el motivo del despido del señor González Suárez. Al respecto, dispuso el siguiente pronunciamiento judicial:

**En primer lugar, tenemos la reclamación de represalias levantada por el señor González cuando alega que su despido se debió al alegado hecho de que le informó a su supervisora que no se estaba cumpliendo con la manera establecida en ley para identificar los drones de desperdicios y que si ese problema no se corregía iría a las autoridades pertinentes. Como apoyo a su posición presentó unas fotos de unos drones sin fecha de acumulación. Por su parte, tanto Baxter como la supervisora Vázquez han negado que el señor González les hubiese hecho señalamiento alguno y que nunca se incumplió con la ley y las etiquetas llevaban la fecha de acumulación. Presentaron como prueba de sus alegaciones una bitácora del manejo de los desperdicios y la declaración jurada de la señora Vázquez. Como podemos apreciar los documentos presentados por ambas partes se contradicen unos a los otros por lo que en estos momentos no nos encontramos en posición de conceder la solicitud de sentencia sumaria.**

**En segundo lugar, tenemos el asunto sobre la razón por la que Baxter alega que despidió al señor González. Baxter alega que el señor González fue despedido por violar las normas establecidas en el Manual de Empleados, violaciones que entiende fueron de carácter mayores y serias, por lo que estaba en todo su derecho de utilizar el despido como primera opción.**

**El dilema estriba en que encontramos que cada una de las infracciones señaladas se refieren al mal manejo por parte del señor González de sus periodos de descanso y**

---

[9] Apéndice de la parte peticionaria, págs. 499-502.

**de tomar alimentos, así como la manera en que registraba sus entradas y salidas en el sistema de KRONOS. Mientras, el señor González alega que tenía el permiso expreso de su supervisora para utilizar su tiempo de la manera antes descrito y presentó una declaración jurada de un tercero que alegadamente tiene conocimiento personal de que dicho permiso fue concedido, y por otra parte también tenemos las declaraciones de la señora Vázquez, prestadas bajo juramento, de que nunca le concedió dicha autorización.**

**Como podemos apreciar, en esta situación las partes han decidido ampararse en sus alegaciones y declaraciones para sostener sus posiciones sobre la existencia o no del alegado permiso. Encontrándonos ante un hecho controvertido que depende de la adjudicación de credibilidad de los declarantes, nos vemos impedidos de conceder la solicitud de sentencia sumaria de Baxter. Establecer si el alegado permiso se concedió es un factor determinante y necesario previo a que se pueda determinar si se (sic) el señor González incumplió con el Manual de Empleados y cometió las ofensas alegadas por Baxter como justificación para el despido**. (Énfasis nuestro).[10]

Inconforme con tal dictamen, el 14 de noviembre de 2024, Baxter recurrió ante este Tribunal de Apelaciones mediante la presentación de una *Petición de Certiorari.* En su recurso, esboza los siguientes señalamientos de error:

A. ERRÓ EL TPI AL DENEGAR LA *MSS* DE BAXTER, A PESAR DE QUE SUS PROPIAS DETERMINACIONES ASÍ LO PROMUEVEN.

B. ERRÓ EL TPI AL DETERMINAR QUE HAY CONTROVERSIA EN CUANTO A SI EL DESPIDO DEL RECURRIDO PROCEDÍA COMO PRIMERA OPCIÓN, Y SI SUS OFENSAS SON JUSTIFICACIÓN PARA EL DESPIDO.

C. PROCEDE QUE SE DICTE SENTENCIA SUMARIA A FAVOR DE BAXTER, PUES LA *MSS* DEMUESTRA QUE NO HAY CONTROVERSIAS DE HECHOS QUE LO IMPIDA.

Sometido su recurso, el 20 de noviembre de 2024, esta Curia dictó *Resolución* en la cual concedió a la parte recurrida hasta el 25 de noviembre de 2024 para mostrar causa por la cual no debemos expedir el auto de *certiorari* y revocar la determinación impugnada. Luego de una concesión de prórroga, el 2 de diciembre de 2024, el señor Mario González presentó *una Moción en Cumplimiento de Orden para Mostrar Causa.*

---

[10] Apéndice de la parte peticionaria, págs. 504-506.

Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

## II.

### A. Recurso de certiorari

Es norma reiterada que, el auto *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021). *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Artículo 670 del Código de Enjuiciamiento Civil de 1933 de la Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva de este recurso "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR,* 185 DPR 307, 338 (2012).

Ahora bien, el ejercicio de nuestra discreción judicial no es absoluto. A tales efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias que activan nuestras facultades revisoras ante las resoluciones y las órdenes interlocutorias:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos

casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

A pesar de que la Regla 52.1 de Procedimiento Civil, *supra*, permite revisar las determinaciones interlocutorias recurridas, "la expedición del auto y la adjudicación en sus méritos es discrecional". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). En consonancia con lo anterior, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, preceptúa los criterios para la expedición de un auto de *certiorari*:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estas consideraciones orientan la función del foro apelativo para ejercer sabiamente nuestra facultad discrecional. *Rivera et al. v. Arcos Dorados et al., supra,* pág. 209. A su vez, la precitada disposición reglamentaria permite que el análisis revisorio no se efectúe en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176.

En atención a los preceptos discutidos, los tribunales revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187

DPR 750, 771 (2013). Así pues, nos corresponde ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración en tal ejercicio discrecional. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 849 (2023).

Por último, es menester puntualizar que la denegatoria del auto de *certiorari* no implica la ausencia de error en el dictamen, cuya revisión se solicita, ni constituye una adjudicación en sus méritos. *Torres Martínez v. Torres Ghigliotty, supra*, pág. 99. En estos casos, la denegatoria es una facultad discrecional, que evita una intervención apelativa a destiempo con el trámite pautado por el foro de instancia. Íd. Por tanto, una vez el foro primario dicte sentencia final, la parte afectada ostentará el derecho para presentar el recurso apelativo correspondiente. Íd. págs. 98-99.

### B. *Moción de sentencia sumaria* al amparo de la Regla 36 de Procedimiento Civil

En nuestro esquema procesal, la sentencia sumaria es un mecanismo que permite la ágil disposición de casos sin la celebración de un juicio sujeto a la inexistencia de controversias genuinas de hechos materiales. *Birriel Colón v. Econo y otro*, 2023 TSPR 120, 213 DPR ___ (2023); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022). Su propósito es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *Acevedo Arocho v. Depto. Hacienda y otros*, 212 DPR 335, 350 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335 (2021). Solo procede su concesión "cuando surge claramente que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia." *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023); *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).

A esos fines, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R.36.1, permite que una parte presente una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). En esa dirección, "un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Oriental Bank v. Caballero García, supra,* pág. 679.

A tales efectos, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, prescribe los requisitos de forma atinentes a esta moción y su respectiva oposición. *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico*, 211 DPR 455, 472 (2023). En lo concerniente, el precitado cuerpo reglamentario fija las formalidades que debe exhibir una petición de tal naturaleza: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) **una** relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a).

De manera similar, la parte opositora de la sentencia sumaria "tiene que cumplir con los requisitos de la Regla 36 de Procedimiento Civil". *Oriental Bank v. Caballero García, supra,* pág. 680.  No debe

adoptar "una actitud pasiva y descansar en las aseveraciones o negaciones que consigne en su alegación". Íd. Al contrario, le compete, "como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra". *León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020). Por tanto, enumerará los hechos materiales de buena fe controvertidos y aquellos sobre los que no media controversia. *Oriental Bank v. Caballero García, supra.*, pág. 680. También, indicará los párrafos o páginas de la prueba documental que establezcan o impugnen cada hecho. Íd. Asimismo, identificará "los argumentos del derecho aplicable por los cuales no se debe dictar la sentencia". *SLG Fernández-Bernal v. RAD-MAN et al, supra*, pág. 336. Acatados tales requisitos procesales, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal". *Ramos Pérez v. Univisión*, 178 DPR 200, 210 (2010); *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007). En cuanto a los documentos presentados, estos deben analizarse de la forma más favorable para la parte promovida, concediéndole así el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 734 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

No obstante, **la normativa imperante no recomienda emplear el mecanismo sumario en aquellos casos en los cuales median elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia**. *Segarra Rivera v. Int'l Shipping et al., supra,* pág. 980; *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301

(1994). (Énfasis nuestro). Ahora bien, amerita su concesión "si el juzgador queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que una vista en los méritos es innecesaria". *Birriel Colón v. Econo y otro, supra; SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 337.

Por último, conviene puntualizar que, los tribunales revisores nos encontramos en igual posición que el Tribunal de Primera Instancia para determinar si procede una sentencia sumaria. *Birriel Colón v. Econo y otro, supra.* Nuestra facultad se limita a examinar de *novo* el expediente y verificar que se cumplan las exigencias de la Regla 36.3 de Procedimiento Civil. *Fernández Martínez v. RAD-MAN San Juan III-D, LLC; supra,* pág. 338; *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010 (2020). No obstante, destacamos que el foro apelativo solo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González v. M. Cuebas,* 193 DPR 100, 114 (2015). Así pues, **carecemos de la facultad para adjudicar hechos materiales en disputa, pues esa tarea concierne al foro primario**. Íd., pág. 115. (Énfasis nuestro).

### D. Despido en represalia según la Ley Núm. 115 de 20 de diciembre de 1991

La Ley Contra el Despido Injusto o Represalias a Todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, (29 LPRA sec. 194), según enmendada (Ley Núm. 115), protege a los trabajadores contra posibles represalias por parte de los patronos, motivadas por el ofrecimiento de algún testimonio o alguna información ante ciertos foros. *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 668 (2017); *Cordero Jiménez v. UPR,* 188

DPR 129, 136 (2013). En lo atinente, los incisos (a) y (b) del Artículo 2 de la Ley Núm. 115, *supra,* disponen lo siguiente:

> (a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, verbalmente o por escrito, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

> (b) Cualquier persona que alegue una violación a esta ley podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de esta ley. 29 LPRA sec. 194b(a)(b).

Así pues, la referida Ley permite instar una causa de acción en aquellas instancias en las que el empleado realiza una actividad protegida y luego es despedido, amenazado o discriminado en el empleo. *Rivera Figueroa v. Autoridad de Acueductos y Alcantarillados,* 177 DPR 345, 361 (2009); *Rivera Prudencio v. Mun. de San Juan,* 170 DPR 149, 160 (2007).

La protección de esta medida legislativa se extiende tanto a empleados públicos como aquellos que laboran en la empresa privada. *Cordero Jiménez v. UPR, supra,* pág. 146. Ahora bien, las garantías de esta Ley no operan de manera automática. El Artículo 2(c) de la Ley Núm. 155, *supra,* establece que corresponde a la parte demandante deberá probar su caso de la siguiente manera:

> (c) El empleado deberá probar la violación mediante evidencia directa o circunstancial. El empleado podrá además establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por esta ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido. 29 LPRA sec. 194b(c).

Nótese que la precitada legislación provee vías que tienen los empleados para establecer una causa de acción por represalias. *Velázquez Ortiz v. Mun. de Humacao, supra*, pág. 670. En primer lugar, dicha Ley establece que el empleado podrá "probar la violación mediante evidencia directa o circunstancial". (29 LPRA sec. 194b). n segunda alternativa, "podrá además establecer un caso *prima facie* de violación a la ley probando que participó en una actividad protegida por esta ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo". (29 LPRA sec. 194b). Este segundo criterio exige demostrar que el patrono tomó una acción adversa y que existe un nexo causal entre dicha acción y el ejercicio de la actividad protegida. *Velázquez Ortiz v. Mun. de Humacao, supra*, pág. 671.

La relación de causalidad puede establecerse mediante el criterio de proximidad de tiempo. Íd. En tales casos, corresponde establecer que la acción adversa ocurrió al poco tiempo de haber participado en la actividad protegida. Íd. No obstante, cuando la proximidad temporal no sea el factor más adecuado para establecer una relación de causalidad, el empleado puede recurrir a cualquier otra evidencia que obre en el expediente y que tienda a demostrar la existencia de un nexo causal. Íd. Véase, además, *Feliciano Martes v. Sheraton*, 182 DPR 368, 398 (2011).

**III.**

En el recurso de epígrafe, Baxter señala que el foro *a quo* incidió al no acoger su moción de sentencia sumaria. Sostiene que el Tribunal de Primera Instancia formuló veinticuatro (24) determinaciones de hechos no controvertidos que a todas luces dan lugar a la desestimación del reclamo por represalia. Particularmente, sostiene que decidió terminar la relación de empleo con el señor González Suárez pues éste incurrió en una crasa situación de incumplimiento. Al respecto, destacó que el recurrido

utilizaba sus periodos de descanso y de tomar alimento de forma conjunta y consecutiva sin autorización. De acuerdo con la parte peticionaria, tal actuación implicó que éste realizara las funciones de su empleo fuera de término o tardíamente. En vista de lo anterior, solicita a este Tribunal de Apelaciones la expedición del auto de certiorari y la consecuente revocación de la *Resolución* impugnada, a los fines de que se desestime la demanda sumariamente por no existir hechos en controversia.

Ante tales alegaciones, el señor González Suárez argumenta que el foro primario actuó conforme a derecho al denegar la concesión de la sentencia sumaria. Argumenta que existen controversias en torno a los siguientes hechos: (1) si las etiquetas de ciertos recipientes de desperdicios líquidos peligrosos tenían la fecha de comienzo de almacenamiento; (2) si el demandante advirtió a su supervisora sobre la falta de fecha almacenamiento en las etiquetas de ciertos recipientes de desperdicios líquidos; y (3) si el señor González Suárez tenía la autorización de su supervisora para tomar los periodos de descanso y alimento, tal como acostumbraba a hacerlo. Por tal motivo, peticiona a este foro intermedio apelativo la denegatoria del auto de *certiorari*.

Surge del expediente ante nuestra consideración que el foro primario consideró la *Moción de Sentencia Sumaria* presentada por Baxter, así como la *Oposición a Moción de Sentencia Sumaria* sometida por el señor González Suárez. Luego de evaluar detenidamente ambos escritos, emitió *Resolución* en la cual concluyó que no procedía desestimar sumariamente la acción legal sobre represalia. Fundamentó su determinación en la existencia de hechos en controversias, que ameritan realizar un examen probatorio sobre la credibilidad de los declarantes:

> **El dilema estriba en que encontramos que cada una de las infracciones señaladas se refieren al mal manejo por parte del señor González de sus periodos de descanso y**

**de tomar alimentos, así como la manera en que registraba sus entradas y salidas en el sistema de KRONOS. Mientras, el señor González alega que tenía el permiso expreso de su supervisora para utilizar su tiempo de la manera antes descrito y presentó una declaración jurada de un tercero que alegadamente tiene conocimiento personal de que dicho permiso fue concedido, y por otra parte también tenemos las declaraciones de la señora Vázquez, prestadas bajo juramento, de que nunca le concedió dicha autorización.**

**Como podemos apreciar, en esta situación las partes han decidido ampararse en sus alegaciones y declaraciones para sostener sus posiciones sobre la existencia o no del alegado permiso. Encontrándonos ante un hecho controvertido que depende de la adjudicación de credibilidad de los declarantes, nos vemos impedidos de conceder la solicitud de sentencia sumaria de Baxter. Establecer si el alegado permiso se concedió es un factor determinante y necesario previo a que se pueda determinar si se el señor González incumplió con el Manual de Empleados y cometió las ofensas alegadas por Baxter como justificación para el despido**. (Énfasis nuestro).[11]

A la luz de ese contexto, conviene repasar que nos encontramos en igual posición que el foro primario para atender la solicitud de sentencia sumaria. Sin embargo, en esta ocasión el ejercicio discrecional no exige no intervenir en la determinación judicial recurrida. Advertimos, **pues, que en casos de sentencia sumaria carecemos de facultad para adjudicar aquellos hechos materiales en disputa, pues esa tarea concierne al foro primario**. *Meléndez González v. M. Cuebas, supra,* pág. 115. (Énfasis nuestro).

Así puntualizado, determinamos, tras examinar sosegadamente la totalidad del expediente ante nos, que nos corresponde abstenernos de ejercer nuestras facultades revisoras en esta etapa interlocutoria. Pese a que la Regla 52.1 de Procedimiento Civil, *supra,* nos concede la facultad para examinar la denegatoria de la moción de sentencia sumaria en cuestión, decidimos no intervenir en esta etapa a los fines de evitar cualquier pronunciamiento a destiempo.

Por último, recordemos, pues, que nuestro ordenamiento jurídico nos habilita exclusivamente a intervenir en aquellas etapas

---

[11] Apéndice de la parte peticionaria, págs. 505-507.

interlocutorias en las cuales medie una actuación arbitraria o caprichosa, un ejercicio de craso abuso de discreción, o una errónea interpretación o aplicación del derecho por parte del foro primario. No obstante, en el recurso presente no contemplamos indicios de tales escenarios a tenor con los parámetros orientativos de la Regla 40 del Tribunal de Apelaciones, *supra.* Por tanto, denegamos la expedición el auto de *certiorari.*

## IV.

Por los fundamentos que anteceden, **denegamos** el auto de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones